UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
LOVE BROOKS,

                      Petitioner,

    - against -

UNITED STATES OF AMERICA,

                      Respondent.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
94-CR-729 (PKC)

PAMELA K. CHEN, United States District Judge:

      Petitioner Love Brooks was convicted in December 1995, following a 14-week jury trial, of arson in violation of 18 U.S.C. § 884(I); using and carrying a destructive device during a crime of violence in violation of 18 U.S.C. § 924(c)(1); two counts of conspiracy to commit murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5); one substantive count of murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1); using and carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1); and conspiracy to distribute crack cocaine and heroin in violation of 21 U.S.C. § 846. (*See* 12/11/1995 Docket Entry.) For these convictions, Brooks was sentenced to life plus an additional 50 years in prison. (*See* Judgment, Dkt. 545.)

      In March 2021, the Court granted Brooks' motion under 28 U.S.C. § 2255 to vacate his conviction for using and carrying a destructive device during a crime of violence and his motion for resentencing pursuant to the First Step Act of 2018, Pub. L. No. 115-391. *See Brooks v. United States*, No. 94-CR-729 (PKC), 2021 WL 10917568, at *5 (E.D.N.Y. Mar. 11, 2021). On June 15, 2021, the Court resentenced Brooks to a total sentence of 26 years, which was an effective sentence of time served, and five years' supervised release. (*See* 6/15/2021 Minute Entry.) Now before this Court is Brooks' petition for writ of error *coram nobis* ("Petition") to vacate his remaining criminal convictions. For the reasons stated herein, the Petition is denied.

## BACKGROUND

**I.      Factual and Procedural Background**

As the Court has previously recounted the factual and procedural background of this case several times,[1] it will recite only those facts necessary to rule on the Petition.

**A.      Petitioner's Criminal Case**

On October 28, 1993, Petitioner Brooks along with several co-conspirators mounted an attack against a member of a rival gang who operated a store located at 2286 Pitkin Avenue, Brooklyn. *See Brooks v. United States*, No. 99-CV-2855 (CPS), 2005 WL 2076565, at *2 (E.D.N.Y. Aug. 26, 2005). Petitioner entered the store and ordered a beer from the person working behind the counter. *Id.* When the counter worker turned to get the beer for Petitioner, he pulled out a hand grenade, pulled the pin, and fled the store. *Id.* The grenade exploded inside the store, caused damage to the plexiglass counter window, and filled the store with smoke. *Id.* However, no one was physically injured from the grenade blast. *See Brooks*, 2021 WL 10917568, at *1. For these and other actions he took on or around that day, Petitioner was sentenced to life plus an additional 50 years' incarceration. (*See* Judgment, Dkt. 545.)

**B.      Petitioner's Rule 60(b) Motion**

On March 1, 2017, Petitioner filed a "motion to vacate" his conviction under Federal Rule of Criminal Procedure 60(b). (*See* Mot. to Vacate, Dkt. 761.) According to Petitioner, at trial, the jury requested and was provided during their deliberations Petitioner's defense exhibits, including

---

[1] The late Judge Charles P. Sifton, who presided over Petitioner's trial, issued several written decisions in response to Petitioner's Section 2255 petitions. *See, e.g.*, *Brooks v. United States*, No. 99-CV-2855 (CPS), 2005 WL 2076565 (E.D.N.Y. Aug. 26, 2005); *Brooks v. United States*, No. 06-CV-1728 (CPS), 2007 WL 1655775 (E.D.N.Y. June 5, 2007); *Brooks v. United States*, No. 06-CV-1728 (CPS), 2007 WL 2907332 (E.D.N.Y. Oct. 4, 2007). More recently, the undersigned recounted the history of this case in detail in the March 2021 Memorandum & Order granting his motion for resentencing. *See Brooks*, 2021 WL 10917568, at *1–3.

the photo array presented to the counter worker who had served Petitioner the beer at the store. (*Id.* at 2–3.) During the investigation, law enforcement officers presented this eyewitness with a photo array, but she was unable to identify Petitioner as the perpetrator. (*Id.* at 2); *see also Brooks*, 2005 WL 2076565, at *2. Petitioner states that in 2008, his then-appellate counsel received a copy of the photo array that was sent back to the jury during deliberations. Petitioner alleges that this photo array—containing photographs of six masked men—was not the same defense exhibit as the photo array that Petitioner intended or did in fact[2] present to the jury, which was an array containing photographs of six "barefaced" men. (*See* Mot. to Vacate, Dkt. 761, at 2.) Petitioner argues that because the jury examined the masked photo array during their deliberations as opposed to the "barefaced" photo array, the jurors were more likely to understand why the witness was unable to identify Petitioner when she was shown the photo array. (*Id.* at 2–3.) Petitioner argues that the jury would have had a harder time accepting the eyewitness's failure to identify him had they examined the "barefaced" photo array containing a photograph of Petitioner. Accordingly, Petitioner claims that "the Government switched the photo arrays to attain a conviction," and that this switch of photo arrays violated his constitutional rights. (*Id.* at 3–5.)

The Government opposed Petitioner's motion, arguing that the motion should be denied as an unauthorized successive *habeas* petition, and was also barred by the applicable statute of limitations. (*See* Gov't Opp. to Mot. to Vacate, Dkt. 764.) Importantly, at the time the Government filed its opposition, it was "[un]able to obtain the case file" corresponding to Petitioner's trial, and therefore "ha[d] not been able to attempt to confirm whether the incorrect photo array was in fact provided to the jury." (*Id.* at 3, n.2.)

---

[2] It is unclear to the Court if the "barefaced" photo array Petitioner references was properly admitted into evidence as a defense exhibit and presented to the jury during trial proceedings.

Petitioner filed a reply, in which he maintained that the photo arrays had been switched, and argued that he had been denied his "right to present a complete defense" and that the alleged switch of photo arrays, "creat[ed] a void judgment" against him. (*See* Pet'r's Reply, Dkt. 765, at 3–4.) On March 19, 2018, the Court denied Petitioner's Rule 60(b) motion, dated March 1, 2017, "as beyond the scope of Rule 60(b)" because it sought to "reopen a *habeas* proceeding that attacks the underlying criminal conviction, but not the initial *habeas* proceedings." (3/19/18 Docket Entry (citing *Harris v. United States*, 367 F.3d 74, 81 n.5 (2d Cir. 2004).)

After the Court resentenced him in May 2021, Petitioner was released from criminal custody. On October 21, 2021, Petitioner filed the instant *pro se* petition for writ of error *coram nobis*, based on the same "switched photo array" theory that he posited in his March 2017 motion to vacate. (*See* Pet. for *Coram Nobis*, Dkt. 918.) Petitioner once again "contends [that] the Government switched the photo arrays to attain a conviction, committing prosecutorial misconduct, and violating [his] right to a fair trial." (*Id.* at 3.) According to Petitioner, "[h]ad the correct exhibit been forwarded to the jurors, per their request [during deliberations], they would not have found [Petitioner] guilty beyond a reasonable doubt." (*Id.* at 5.) The Court did not order the Government to respond to the instant petition for error *coram nobis*.

## LEGAL STANDARD

*Coram nobis* "is a common law remedy dating back to 'before the Republic's founding.'" *United States v. Lugo*, 100 F. Supp. 3d 285, 290 (E.D.N.Y. 2015) (quoting *Medina v. United States*, 12-CV-238 (JPO), 2012 WL 742076, at *1 (S.D.N.Y. Feb. 21, 2012). "[R]elief under the writ is strictly limited to cases in which errors of the most fundamental character have rendered the proceeding itself irregular and invalid." *Foont v. United States*, 93 F.3d 76, 78 (2d Cir. 1996) (cleaned up); *see, e.g.*, *United States v. Morgan*, 346 U.S. 502, 508 (1954) (noting that *coram nobis* has been invoked to inquire as to "insanity of a defendant, a conviction on a guilty plea through

4

coercion of fear of mob violence, [or] failure to advise of right of counsel") (citations omitted); *Korematsu v. United States*, 584 F. Supp. 1406, 1420 (N.D. Cal. 1984) (granting writ to Fred Korematsu, a United States citizen of Japanese ancestry, to vacate his conviction for being in a place from which persons of Japanese ancestry were excluded). Therefore, *coram nobis* is "an 'extraordinary remedy,' [that is] available only in rare cases." *Kovacs v. United States*, 744 F.3d 44, 54 (2d Cir. 2014) (quoting *Morgan*, 346 U.S. at 511).

To be successful in a *coram nobis* application, the petitioner "must make three showings: (1) 'there are circumstances compelling such action to achieve justice'; (2) 'sound reasons exist for failure to seek appropriate earlier relief'; and (3) 'the Petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ.'" *du Purton v. United States*, 224 F. Supp. 3d 187, 191 (E.D.N.Y. 2016) (quoting *Kovacs*, 744 F.3d at 49). Petitioners bear the burden of proof, and must meet that burden in light of the Supreme Court's warning that lower courts must "presume[] [that] the [prior] proceedings were correct." *Morgan*, 346 U.S. at 502. Moreover, since *coram nobis* is reserved for petitioners who are no longer in custody pursuant to a criminal conviction, courts are often "more reluctant to grant relief" under *coram nobis*, than they would be to grant *habeas* relief under similar circumstances. *See Moskowtiz v. United States*, 64 F. Supp. 3d 574, 577–78 (S.D.N.Y. 2014) (collecting cases).[3]

At the same time, a petition for *coram nobis* that has been filed *pro se* must be "liberally construe[d] . . . 'to raise the strongest arguments that they suggest.'" *Dixon v. United States*, No. 14-CV-1223 (JS), 2018 WL 910522, at *4 (E.D.N.Y. Feb. 4, 2018) (quoting *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014)); *see also Birkett v. United States*, No. 99-CV-

---

[3] As previously noted, after granting Petitioner's Section 2255 petition to vacate one of his convictions under 18 U.S.C. § 924(c) (Dkt. 892), the Court resentenced Petitioner on June 26, 2021, to an effective sentence of time served and five years' supervised release.

1729 (RR), 1999 WL 754151, at *3 (E.D.N.Y. Aug. 19, 1999) ("Because [petitioner seeking *coram nobis*] proceeds *pro se*, this court is obliged to read his papers liberally."). However, *pro se* status "does not excuse [a] [p]etitioner 'from complying with relevant rules of procedural and substantive law." *Dixon*, 2018 WL 910522, at *4 (cleaned up).

## DISCUSSION

As explained above, the Petition relies entirely on Petitioner's assertion that at his trial, the Government presented the wrong photo array to jurors who requested to see this evidence during their deliberations. For the reasons explained below, the Petition is denied.

### I.  Timeliness of the Petition

Timeliness of a petition for *coram nobis* is "a threshold procedural hurdle to obtaining *coram nobis* relief." *du Purton*, 224 F. Supp. 3d at 191; *see also Worlumarti v. United* States, 613 F. App'x 69, 71–72 (2d Cir. 2015) (affirming district court's denial of *coram nobis* on timeliness, while declining to reach the merits). Because *coram nobis* is a collateral attack on a criminal conviction, there is no specific statute of limitations for filing the writ. *See Foont*, 93 F.3d at 79. However, an individual's "petition for writ of error *coram nobis* . . . may still be time barred if the petitioner cannot provide a justified reason for failure to seek appropriate relief at an earlier date." *See Cruz v. People of New York*, No. 03-CV-9815 (DC), 2004 WL 1516787, at *4 (S.D.N.Y. July 6, 2004); *see also Dorfmann v. United States*, No. 13-CV-4999 (JCF), 2014 WL 260583, at *6 (S.D.N.Y. Jan. 23, 2014) (explaining that an "unjustified delay" in filing a petition is "fatal to an application for *coram nobis*"). "The onus is on the petitioner to demonstrate justifiable reasons for his delay in bringing the collateral attack." *Nordahl v. United States*, No. 08-CV-3736 (SJF) (ARL), 2010 WL 11530551, at *8 (E.D.N.Y. June 30, 2010) (citations omitted). "A district court considering the timeliness of a petition for a writ of error *coram nobis* must decide the issue in light of the circumstances of the individual case." *Foont*, 93 F.3d at 79.

6

Here, in 2008, Petitioner's then-appellate counsel received "a copy of the photo array" at issue in the Petition, and mailed the photo array to Petitioner on October 22, 2008. (Petition for *Coram Nobis*, Dkt. 918, at 2, 7–8; *see also* Mot. to Vacate, Dkt. 761, at 3.) Petitioner claims that the photo array he received in October 2008 was not the one shown to the eyewitness in his case, and therefore the jury was misled. (Pet. for *Coram Nobis*, Dkt. 918, at 4–5.) Although Petitioner learned about this alleged switching of the photo arrays around October 2008, he waited 8.5 years, until March 2017, to raise the issue as a ground for vacating his conviction. (*See* Mot. to Vacate, Dkt. 761.)

Courts in this circuit have regularly rejected *coram nobis* petitions based on delays shorter than the 8.5 years that Petitioner waited. *See, e.g.*, *Moskowitz*, 64 F. Supp. 3d at 580 (finding untimely a *coram nobis* petition filed five years after grand jury testimony was unsealed, at which point petitioner learned of alleged inconsistencies in grand jury testimony); *Foont*, 93 F.3d at 78 (affirming district court's denial of writ where there was a five-year delay between when petitioner "knew or should have known . . . of the facts underlying his [*coram nobis*] claim" and when he filed the writ). Here, Petitioner has not offered any explanation for why he waited until 2017 to move to vacate his conviction based on the purported issues surrounding the photo array shown to the jury when he clearly "knew or should have known" upon receiving the photo array in 2008 that his constitutional right to a fair trial was—allegedly—violated. *Id*. Because Petitioner has not offered any reasons to explain his failure to seek appropriate relief earlier, the Petition is denied as untimely.[4]

---

[4] The Court has considered a separate threshold issue: whether the nearly identical nature of this *coram nobis* petition to Petitioner's earlier petition filed in March 2017 creates a procedural bar. *See Durrani v. United States*, 294 F. Supp. 2d 204, 209–10 (D. Conn. 2003) ("Prior to reaching the merits of the *coram nobis* petition, the court must determine whether, in light of

**II.     Merits of the Petition**

Even if Petitioner could offer a valid and sufficient reason for his years-long delay in seeking relief based on the photo array, the Petition would nevertheless be denied on the merits, because he has failed to show that there are "circumstances compelling [*coram nobis* relief] to achieve justice." *See Kovacs*, 744 F.3d at 49. Petitioner claims that the allegedly erroneous photo array infringed on his constitutional right to present a defense and his "due process right to present a complete defense." (*See* Pet. for *Coram Nobis*, Dkt. 918, at 1, 3–4 (citing *Rosario v. Kuhlman*, 839 F.2d 918 (2d Cir. 1988); *United States v. Stein*, 541 F.3d 130 (2d Cir. 2008).) Petitioner further asserts that this alleged switching of the photo arrays constituted "prosecutorial misconduct"; and constituted ineffective assistance of counsel. (Pet. for *Coram Nobis*, Dkt. 918, at 1 (capitalization altered).) The Court addresses each of these arguments in turn.

---

[petitioner's] prior *habeas corpus* petition, which raises grounds identical to those in the current petition, the petition [for *coram nobis*] is properly before the court."). Although the Second Circuit has not yet addressed this issue, several district courts within this circuit have imported into the *coram nobis* context the test from *Sanders v. United States*, 373 U.S. 1 (1963), for when a successive *habeas* petition is procedurally barred. *See, e.g.*, *Dixon v. United States*, No. 14-CV-960 (KMK), 2015 WL 851794, at *7 n.15 (S.D.N.Y. Feb. 27, 2015) ("[B]ecause the § 2255 procedure often is applied by analogy in *coram nobis* cases, the *Sanders* analytical framework is instructive" (internal quotations marks and citations omitted)); *see also Durrani*, 294 F. Supp. 2d at 209–10 (adopting *Sanders* test).

Applying *Sanders*, these district courts have refused to entertain a *coram nobis* petition if: "(1) the same grounds presented in the [*coram nobis*] petition were determined adversely to petitioner in an earlier collateral proceeding; (2) the prior determination was on the merits; and (3) the 'ends of justice' would not be served by reaching the merits of the repetitive grounds in the current petition." *Durrani*, 294 F. Supp. 2d at 209–10 (citing *Sanders*, 373 U.S. at 15). Here, the Court finds that *Sanders* does not bar the Court's consideration of the *coram nobis* petition because the Court previously rejected Brooks' March 2017 motion on the basis that it was an unauthorized successive petition, and not on the merits. (*See* 3/19/18 Docket Entry.) Therefore, even if the Court were to apply *Sanders*, this petition would not be barred by that decision.

### A. Right to Present A Defense

A criminal defendant's constitutional right to present a defense is violated when excluded testimony or evidence "was material to the presentation of the defense so as to deprive the defendant of fundamental fairness." *Rosario*, 839 F.2d at 924. Therefore, a writ of either *habeas corpus* or *coram nobis* "would issue only where petitioner can show that the error deprived [him] of a *fundamentally fair* trial." *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983) (emphasis in the original; citations omitted). A district court considering whether a petitioner has been deprived of a fundamentally fair trial must consider the materiality of the excluded evidence to the presentation of the defense. *Id.* (citing *United States v. Agurs*, 427 U.S. 97, 112–13 (1976)).

Petitioner's argument that he was deprived of his right to present a defense fails for several reasons. First, Petitioner offers only his statement that the allegedly incorrect photo array attached to his filing is different from the one he submitted at trial as a defense exhibit and provides no other evidence to support his claim. This bare assertion by Petitioner does not satisfy his burden of proof, which is especially high given the Supreme Court's directive that lower courts shall "presume[]" that prior "proceedings were correct" when considering *coram nobis* petitions. *See Morgan*, 346 U.S. at 512.

Second, even assuming that Petitioner is correct—that the jury was provided a photo array that was different from the one that was shown to the eyewitness during the investigation—the fact is immaterial since that eyewitness did not identify Brooks as the perpetrator from the photo array. That failure to identify Brooks, in fact, was helpful to his defense, which is why Brooks introduced the photo array as a defense exhibit. Construing Petitioner's arguments in the light most favorable to him, the Court notes that in his March 2017 motion to vacate, Brooks contended that the allegedly incorrect photo array "misled the jurors as to why the eyewitness did not identify the

9

movant as the culprit in his alleged crimes, which violated his right to present a defense." (*See* Mot. to Vacate, Dkt. 761, at 3 (emphasis omitted).) Essentially, Petitioner argues that the incorrect photo array that was swapped in for the actual one so undermined the exculpatory effect of the eyewitness's failed identification that it had a material effect on the jury's decision to convict Brooks.

The Court disagrees with this convoluted and unsupported argument. Even if the jurors were presented with the wrong photo array during their jury deliberations—which again, the Court emphasizes Petitioner asserts without any supporting evidence—such an error would not be material because there was other evidence in the record to establish the eyewitness's failure to identify Petitioner as the offender. In addition to the photo array, "Brooks' counsel offered as evidence at trial two police reports . . . containing [the eyewitness's] accounts of the incident" as well as testimony from law enforcement indicating that the eyewitness "failed to select Brooks' photograph from a photo array." Given this additional evidence about the eyewitness's inability to identify Petitioner, the Court cannot conclude that any photo array mix up was so material "to the presentation of the defense so as to deprive the defendant of fundamental fairness." *Rosario*, 839 F.2d at 924.[5] The immateriality of the photo array and the eyewitness's failure to identify Petitioner is reinforced by the fact that there was other evidence sufficient to support the jury's decision to convict him, specifically the testimony from his accomplice, who was at the scene of

---

[5] In fact, Brooks argues that "[a]mid deliberations[,] the Jury requested to review all of [his] defense exhibits." (Pet. for *Coram Nobis*, Dkt. 918, at 2.) Although the Court cannot determine whether the jury was provided with the exhibits during their deliberations, under Brooks' own account, the jury had the opportunity to review not only the photo array at issue, but also the police reports and transcript of the law enforcement testimony about the eyewitness's failure to identify Brooks. The bottom line is that the jury had ample evidence from which to conclude that the eyewitness failed to identify Brooks as the perpetrator during the investigation of the case.

10

the alleged crimes. *See Brooks*, 2005 WL 2076565, at *2 (affirming Petitioner's conviction and noting that "[e]vidence relating to Brooks' involvement in the incident came principally from accomplice Walter Richburg.").

In sum, Petitioner fails to meet his burden on this prong because his theory requires the Court to make a series of assumptions, namely: (1) that the photo array used by Petitioner at trial was not the same photo array shown to the jury upon their request; (2) that had the jury examined the "barefaced" photo array they would have concluded that the eyewitness's failure to identify Brooks could not be explained away; (3) that the jury would have disregarded other evidence submitted by Brooks as to the eyewitness's failed identification; and (4) that the jury decided to convict Brooks not based on the testimony of an accomplice implicating him, but instead because they found the eyewitness's non-identification of Petitioner to be unreliable. The Court, however, is not permitted to make these types of unsupported assumptions or engage in mere speculation. *See Morgan*, 346 U.S. at 512 ("It is presumed the [underlying] proceedings were correct and the burden rests on the accused to show otherwise."). Therefore, Petitioner has failed to meet his burden that his right to a fair trial was violated.

### B. Prosecutorial Misconduct

To establish prosecutorial misconduct, a petitioner seeking collateral relief must show that the Government's actions were "so egregious as to violate the defendant's due process rights." *Rodriguez v. Smith,* 485 F. Supp. 2d 368, 380–81 (S.D.N.Y. 2007) (quoting *Tankleff v. Snekowski*, 135 F.3d 235, 252 (2d Cir. 1998)). Courts in the Second Circuit apply a three-part test when considering whether prosecutorial misconduct was prejudicial: (1) the severity of the misconduct; (2) the measures adopted to cure the misconduct; and (3) the certainty of conviction absent the misconduct. *See United States v. Elias*, 285 F.3d 183, 190 (2d Cir. 2002). Here, Petitioner has

11

failed to even allege or show that there was any prosecutorial misconduct. Because Petitioner relies solely on his own assertion that there was a swap in photo arrays, the Court cannot find based on this record that there was any misconduct, let alone that it amounted to prejudice "so egregious at violate [his] due process rights." *Rodriguez*, 485 F. Supp. 2d at 380–81. Therefore, the Petition cannot be granted on a prosecutorial misconduct theory.

### C. Ineffective Assistance of Counsel

Although the Petition mentions ineffective assistance of his appellate counsel as an additional ground for *coram nobis* relief, Petitioner barely develops this argument. To prevail on an ineffective assistance of counsel claim, Petitioner must "(1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms,' and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation." *United States v. Cohen*, 427 F.3d 164, 167 (2d Cir. 2005) (quoting *Strickland v. Washington*, 466 U.S. 668, 693 (1984)).

Here, the Petition merely mentions that even though he "requested his Appellate Counsel to provide him with all documents pertaining to his defense[,]" his counsel was not able to get the documents used at trial until 2008. (Pet. for *Coram Nobis*, Dkt. 918, at 3.) Even if that delay could be attributed to Petitioner's counsel, it would be difficult for Petitioner to "affirmatively prove prejudice," *see Cohen*, 427 F.3d at 167, because the Court's assessment of timeliness of the petition for *coram nobis* begins with when Petitioner "knew or should have known" that his constitutional rights were violated. *See Foont*, 93 F.3d at 78. Therefore, the Court denies the Petition for writ of *coram nobis* based on ineffective assistance of counsel.

* * *

Thus, Petitioner has not met his burden on the first part of *Kovacs*, which requires him to show that there "are circumstances compelling [a writ of *coram nobis*] to achieve justice." *See Kovacs*, 744 F.3d at 49.

### III.   Petitioner Fails to Show that He is Suffering Any Legal Consequence

Given Petitioner's failure to establish that his Petition is timely or has merit, the Court need not address the third *Kovacs* factor.  Nonetheless, the Court further finds that Petitioner has failed to show that he "continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." *Fleming v. United States*, 146 F.3d 88, 90 (2d Cir. 1998).  In fact, although the Petition notes that "serious collateral consequences surround the strictures and deprivations of liberty through supervised release," Petitioner does not identify any of those collateral consequences.  (Pet. for *Coram Nobis*, Dkt. 918, at 5.)

Yet, in light of the obligation to liberally construe *pro se* submissions as raising the strongest possible arguments, *see Kirkland*, 760 F.3d at 224, the Court notes that in July 2021, several months before the Petition was filed, Brooks requested that the Court relax the curfew condition of his supervised release because his job at the time as a security guard required him to work in the evenings.  (*See* Letter Mot. to Modify Conditions of Release, dated 7/29/21, Dkt. 915.)  In denying that request, the Court noted that the supervised release condition permits the Probation Department to modify curfew "to accommodate [Petitioner's] work schedule."  (Dkt. 910, at 6; *see also* 8/20/21 Docket Order.)  Moreover, the Court imposed a curfew only for the first six months of Petitioner's supervised release; therefore, Petitioner is no longer subject to a curfew, which is the only collateral consequence Petitioner has ever raised with the Court.  Accordingly, even construing Petitioner's arguments liberally, the Court finds that Petitioner has failed to show

13

that *coram nobis* relief is needed to address legal consequences from his conviction that he continues to suffer.

## CONCLUSION

For the reasons explained above, Petitioner Brooks has failed to carry his burden for *coram nobis* relief. Accordingly, the Petition is denied.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: June 5, 2023
 Brooklyn, New York